IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| ERIN ELAINE NOLTE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:20-cv-00080-M-BP |
| | § | |
| ANDREW M. SAUL, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Erin Elaine Nolte ("Nolte") filed this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for supplemental security income ("SSI") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that Chief United States District Judge Barbara M. G. Lynn **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

I.  **STATEMENT OF THE CASE**

Nolte was born on August 6, 1984 and obtained a GED. ECF No. 16 at 6. She filed for SSI on June 12, 2018. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 14-1 at 14. She alleged that her disability began on June 12, 2018. *Id.* The Commissioner initially denied her claim on August 22, 2018, and denied it again upon reconsideration on January 8, 2019. *Id.* Nolte requested a hearing, which was held before Administrative Law Judge ("ALJ") James Linehan on October 1, 2019 via video, with Nolte and her attorney present. *Id.* The ALJ issued an unfavorable decision

on October 22, 2019, finding that based on the applications for SSI, Nolte was not disabled. Tr. 26.

The ALJ employed the statutory five-step analysis and established during step one that Nolte had not engaged in substantial gainful activity since June 12, 2018. Tr. 16. At step two, he determined that Nolte had the severe impairments of depression, Post Traumatic Stress Disorder (PTSD), obesity, degenerative disc disease of the cervical spine, and headaches. *Id.* At step three, he found that Nolte's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 17. He found that Nolte

> had the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a). In addition the claimant would have nonexertional limitations in that claimant would be limited to work that is of SVP level 2 or less as defined in the DOT. The claimant would have the ability to understand, remember, and carry out ordinary and/or routine written or oral instructions and tasks and to set realistic goals and plans independently of others. The claimant would have the ability to interact appropriately with supervisor, co-workers, and work situations.

Tr. 19. At step four, the ALJ found that Nolte had no relevant past work. Tr. 25. And at step five, the ALJ determined that there were a significant number of jobs in the national economy that Nolte could perform. Tr. 25.

The Appeals Council denied review on April 22, 2020. Tr. 5. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

II.     **STANDARD OF REVIEW**

Title II, 42 U.S.C. § 416 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 416 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 416.920. First, the claimant must not be engaged in any substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). Before this step, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197-98; 20 C.F.R. § 416.920(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the

3

national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.  ANALYSIS

Nolte raises two issues on appeal. She claims that the ALJ failed to (1) consider the limitations set forth in the medical opinion evidence, and (2) identify work in significant numbers that she can perform. ECF No. 16 at 5.

####    A.    **Substantial evidence supported the ALJ's RFC determination.**

Nolte argues that the ALJ did not properly consider all of the evidence presented by the State agency medical consultant ("SAMC") Susan Posey, Psy.D. ("Dr. Posey") after he stated that Dr. Posey's opinion was persuasive. *Id.* at 17. Nolte claims that because the ALJ rejected Dr. Posey's determination that Nolte was able to "recall at a span of two-step commands," substantial

4

evidence did not support the ALJ's RFC determination. *Id.* at 18. Further, Nolte argues the ALJ erred because he selectively relied on portions of the opinions of Dr. Posey and SAMC Joel Forgus, Ph.D. ("Dr. Forgus") while ignoring other portions of their opinions. *Id.* at 21. Finally, Nolte argues that substantial evidence did not support the RFC determination because the ALJ's hypothetical question to the Vocational Expert ("VE") did not include a limitation to tasks that involve "a span of two-step commands." *Id.* at 22.

The Commissioner argues that the ALJ's RFC determination was sufficient and that he was not required to "mirror" the medical opinions of Dr. Posey and Dr. Forgus. ECF No. 17 at 4. The Commissioner also asserts that the ALJ was free to incorporate only those limitations he found consistent with the record and that he need not incorporate limitations based on the opinions of a SAMC who was not a treating physician. *Id.* at 5. The Commissioner argues that counsel represented Nolte at the administrative hearing and had the opportunity to cross-examine the VE to clear up any defects in the hypothetical question, but did not do so. *Id.* at 6. Finally, the Commissioner argues that substantial evidence supports the ALJ's ultimate decision that Nolte was not disabled. *Id.* at 6-7.

By definition, a claimant's RFC is the most the claimant can still do despite the claimant's impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2020). The ALJ is not required to expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-cv-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422-23 (5th Cir. 2008) (per curiam)). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The functions in paragraphs (b), (c), and (d) relate to physical, mental, and other abilities. The ALJ

considers the nature and extent of the claimant's physical, mental, and other relevant limitations. 20 C.F.R. § 416.945.

In determining a claimant's physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *Id.* at § 416.945(b). In determining the claimant's mental limitations, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting. *Id.* at § 416.945(c). The ALJ uses what is known as the "paragraph B criteria" to rate the degree of the claimant's mental limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* at § 416.920a; *see id.* Part 404, Subpart P, App'x 1. Finally, the ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. § 416.945(d).

Nolte asserts that the ALJ recognized the opinions of Drs. Posey and Forgus as persuasive, but "failed to account for their opinions" regarding Nolte's ability to carry out instructions. ECF No. 16 at 19. She argues that the ALJ "erred by picking and choosing from Drs. Posey's and Forgus's opinion only those portions that supported his decision while ignoring other portions." ECF No. 16 at 21. However, Nolte has not shown a lack of credible evidence or medical findings that support the ALJ's RFC finding.

When determining the extent of a claimant's ability to do physical and mental work activities, the ALJ must consider medical opinions together with the rest of the relevant evidence in the record. 20 C.F.R. § 416.945(a)(3). The claimant bears the burden of presenting evidence of disability, and the ALJ's duty is to develop all relevant facts. *See Audler*, 501 F.3d at 448; *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015). To upset the ALJ's decision, the plaintiff must show that there was insufficient evidence for a reasonable person to reach the same conclusion as the

ALJ, not that some contradictory evidence might exist. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The ALJ did not wholly ignore the opinions of Drs. Posey or Forgus. Instead, he found that the medical record did not support a determination that the Plaintiff was limited to only complete tasks with "two step commands." Tr. 19. Plaintiff's disagreement with the ALJ's RFC does not carry her burden of establishing that no substantial evidence supports the ALJ's determination. Here, the ALJ cited evidence that supports his RFC determination. Tr. 19-24. As a result, reversal of the ALJ's opinion is not required on this point.

Nolte also urges reversal at step five because the ALJ's hypothetical question to the VE did not include a limitation to only completing tasks with "two step commands." ECF No.16 at 22-23. The Commissioner responds that Nolte's counsel had the opportunity to cross-examine the VE and offer contradictory evidence, but chose not to do so. ECF No. 17 at 6. At step five, the Commissioner must show "that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. When the ALJ cannot rely on the Medical-Vocational Guidelines to determine disability, he "must rely upon expert vocational testimony or other similar evidence to establish that such jobs exist." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citation omitted). The ALJ may consult various sources of evidence, including VEs and the Dictionary of Occupational Titles ("DOT"), to determine alternative and available work that the claimant can perform. *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 608 (E.D. Tex. 2009).

This Court has noted:

> When an ALJ bases a determination of non-disability on the testimony of a [VE] in response to a hypothetical question, the hypothetical question is defective and constitutes reversible error if either of the following is true:
> 1. The hypothetical question did not incorporate reasonably all disabilities of the claimant recognized by the ALJ, or
> 2. The claimant or his representative was not afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical

7

>question (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question).

*Detwiler v. Astrue*, No. 5:10-cv-00194-BG, 2012 WL 569188, at *4-5 (N.D. Tex. Jan. 19, 2012), *rec. adopted,* No. 5:10-cv-00194-C-BG, 2012 WL 589577 (N.D. Tex. Feb. 22, 2012) (internal citation omitted). The hypothetical question in this case was not defective because neither of these requirements was met.

First, the hypothetical question reasonably incorporated all of Nolte's disabilities and impairments recognized by the ALJ. In his written opinion, the ALJ recognized Nolte's severe impairments of depression, PTSD, obesity, degenerative disc disease of the cervical spine, and headaches. Tr. 16. He fashioned an RFC that included those limitations. Tr. 19. The ALJ incorporated all of Nolte's impairments and limitations when he asked the VE the following hypothetical question:

>Assume a hypothetical individual of the claimant's age, younger, high school, GED, no [prior relevant work.] Let's assume this hypothetical individual can perform the full range of sedentary work as defined in Appendix 2, Subpart P of the regulations…In addition, the claimant would have non-exertional limitations. Claimant would be limited to work that is of SVP level of 2 or less as defined in the DOT. Claimant would have ability to understand, remember, or carry out, ordinary and/or routine oral or written instructions and tasks. Set realistic goals, plan independently of others. Claimant would have ability to interact appropriately with supervisors, coworkers, and work situations. Could this hypothetical individual perform other work out there under this RFC, if so, would you have national titles, and did you have job titles and national numbers.

Tr. 54-55. As discussed above, the ALJ based the RFC on substantial evidence consistent with objective medical evidence and other evidence of record. The ALJ sufficiently incorporated all disabilities and impairments he recognized in his hypothetical question to the VE, and his question was not materially vague or misleading. As a result, there is not a "significant discrepancy . . . between the limitations included in the hypothetical question posited to the VE

8

and the limitations the ALJ found in his decision." *Ellis v. Astrue*, No. 7:09-cv-00070-O-BF, 2010 WL 3422872, at *5 (N.D. Tex. July 27, 2010).

Second, even if the hypothetical question was lacking, Nolte had a reasonable opportunity to correct any deficiencies in the ALJ's question. When a claimant has such an opportunity, she cannot sit by and then later claim that the question was deficient and warrants reversal. *Carey v. Apfel*, 230 F.3d 131, 145-47 (5th Cir. 2000). For this additional reason, Nolte's challenge to the ALJ's hypothetical question to the VE is not valid, and reversal on this basis is not required.

> **B.     The ALJ did not establish that work that Nolte could perform was available in significant numbers in the national economy.**

Nolte argues further that the ALJ failed to establish the existence of work in significant numbers available in the national economy that she could perform. ECF No. 16 at 24. The VE identified three occupations that matched Nolte's RFC: an addresser, final assembler of optical goods, and jewelry. Tr. 55. He found that those jobs existed nationally in the following numbers, 7,500, 4,000, and 3,500, respectively. *Id.* Nolte argues that case law does not support the ALJ's determination that those numbers of jobs were significant. ECF No. 16 at 26-27. The Commissioner responds that there is no "express number or test to determine a 'significant number' of jobs." ECF No. 17 at 9.

The Commissioner bears the burden at step five of showing "substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. The applicable regulation requires that "other work (jobs) that [the claimant] can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country)." 20 C.F.R. § 404.1560(c)(1). The Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [his or her] [RFC] and vocational factors." *Id.* § 404.1560(c)(2).

9

The Fifth Circuit has not set a specific number of jobs that it deems to be a "significant number." *See Lirley v. Barnhart*, 124 F. App'x 283, 284 (5th Cir. 2005) (50,000 jobs in the national economy was a significant number). However, the Sixth Circuit has suggested that a

> judge should consider many criteria in determining whether work exists in significant number, some of which might include: the level of claimant's disability; the reliability of the [VE]'s testimony; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on.

*Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (finding 1,350-1,800 jobs in a nine-county area in Ohio to be significant).

Other judges in this Court have found that jobs in numbers similar to those at issue in this case were not a significant number. *See Adrienne W. v. Berryhill*, No. 3:17-cv-1218-N (BT) (N.D. Tex. Aug. 24, 2018), *rec. adopted*, No. 3:17-cv-1218-N (BT) (N.D. Tex. Sept. 14, 2018) (1,300 call out operator jobs in Texas and 16,000 jobs nationally, and 1,000 surveillance system monitor jobs in Texas and 17,000 jobs nationally not significant); *Morgan v Colvin*, No. 3:15-cv-2589-L (BH), 2016 WL 5369495 (N.D. Tex. Sept. 6, 2016), *rec. adopted*, 2016 WL 5341305 (N.D. Tex. Sept. 23, 2016) (1,000 surveillance system monitor jobs in Texas and 17,000 jobs nationally, and 780 school bus monitor jobs in Texas not significant); and *Johnson v. Colvin*, No. 3:15-cv-1737-N, 2016 WL 1212436, at *4 (N.D. Tex. Feb. 25, 2016), *rec. adopted*, No. 3:15-cv-01737-N, 2016 WL 1228630 (N.D. Tex. Mar. 28, 2016) (1,000 jobs in Texas and 9,200 nationally not a significant number). *But c.f., Thompson v. Astrue*, No. 08-cv-1134-G, 2010 WL 2816677, at *7 (N.D. Tex. June 17, 2010), *rec. adopted*, No. 08-cv-1134-G, 2010 WL 2816680 (N.D. Tex. July 15, 2010) (105,000 jobs in the national economy was significant).

Here, the ALJ relied solely on the testimony of the VE to determine that there were a significant number of jobs in the national economy that the plaintiff could perform. Tr. 25-26. The ALJ ultimately found that 7,000 jobs for an addresser, 4,000 jobs as a final assembler of optical

10

goods, and 3,000 jobs for a jewelry preparer in the national economy were not a significant number of jobs for Nolte's RFC. *Id.* However, as other judges in this Court have held in the cases just cited, the number of jobs presented by the VE's testimony does not represent a significant number of jobs in the national economy.

Despite his argument to the contrary, the Commissioner did not meet his burden of establishing that there were a significant number of jobs that Nolte could perform. While other courts have held that a similar number of jobs was enough to constitute a significant number of jobs in the national economy, the cases cited by the Commissioner are older decisions that the courts in more recent decisions have not followed. *See, e.g.*, *Mercer v. Halter*, No. 4:00-cv-1257-BE, 2001 WL 257842 at *6 (N.D. Tex. Mar. 7, 2001) (500 jobs in the national economy was a significant number); *Coatney v. Callahan*, 125 F.3d 851, 1997 WL 574827 at *1 (5th Cir. 1997) (unpublished) (800 jobs in Texas was significant). Consequently, substantial evidence does not support the ALJ's step five finding that Nolte could perform other work that exists in significant numbers in the national economy, and reversal is appropriate on this point.

### IV.   CONCLUSION

Substantial evidence supported the ALJ's RFC determination. However, the ALJ did not meet his burden of establishing by substantial evidence that Nolte can perform work that exists in significant numbers in the national economy. Because of this reversible error, the undersigned **RECOMMENDS** that Chief Judge Lynn **REVERSE** the Commissioner's decision and **REMAND** this action for further administrative proceedings.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2019) and Fed. R. Civ. P. 72(b)(1) (2019). In order to be

specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    **SIGNED** on March 16, 2021.

*/s/ Hal R. Ray, Jr.*
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE